UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

vs.  CRIMINAL NO. 1:21-CR-733(CRC)

JEREMY BAOUCHE  February 6, 2023

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Jeremy Baouche was one of thousands who invaded the United States Capitol on January 6, 2021. It is difficult to imagine any case where the offense conduct is as well recorded and established as this one. There is no dispute that the work on the United States Congress was obstructed that day simply on account of the sheer number of individuals that entered the Capitol and forced the adjournment of Congress and the suspension of all orderly activities within the building. Nor is there any dispute that, despite the aggravating roles that many defendants played—sedition, assault, and conspiracy to name a few—each individual bears some responsibility for the effect on Congress, its staff, and our system at large. Not only does Jeremy Baouche acknowledge that responsibility, he regrets breaking the law and is remorseful about doing so.

The defense submits this memorandum in aid of sentencing in anticipation of the sentencing scheduled for February 15, 2023 at 3 pm. On August 25, 2022, Mr. Baouche pled guilty to one count of Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). While the United States Sentencing Guidelines are not applicable to a misdemeanor, the statutory maximum in this case is six months of incarceration or up to 5 years of probation. The defense's position is that a sentence of probation, restitution, and an appropriate fine are "sufficient but not greater than necessary" to accomplish the law's purposes. 18 U.S.C. § 3553(a).

I.     HISTORY AND CHARACTERISTICS OF THE DEFENDANT.

Perhaps the quality that most stands out when a person meets Jeremy Baouche is his earnestness. That person may not agree with all of Mr. Baouche's opinions, but there is little doubt that—but for this offense—he is unfailing polite but, nonetheless, intense and serious in nearly every observation he shares. Jeremy is an engineer by training, education, and profession. *PSR*, ¶¶ 53, 60, 61. It is not difficult to see why: he is precise, thoughtful, and inquisitive. He occupies a world where there is a correct answer: the light bulb illuminates or it does not, the ship sinks or floats. Whatever the engineering challenge, it can be found by diligently applying the traits Jeremey possesses. This is so much the case that Electric Boat—a subsidiary of the defense contractor General Dynamics—hired him to work on nuclear submarines at the naval base in Groton, Connecticut. *See* ¶ 61. Having lost that job, he is now employed by another large Connecticut defense contractor in an engineering role.

Jeremy did not turn this characteristic off when he left work. He brings the same intensity and approach to other pursuits of his life. While those qualities well serve people in the hard and applied sciences, they are not always as compatible with the relative value judgements required in politics and law. In 2016—only a year out of high school, Jeremy developed an interest in politics that became passions. Interestingly, he reports transcending the political spectrum as he developed this interest: while the content of specific political beliefs are not relevant to sentencing, part of these cases are about political beliefs so rigid that they refuse bow to legal limits on political advocacy: to the extent Mr. Baoche has shown a willingness to revaluate his beliefs in the past, it shows a the potential to do so in the future. In any event, Mr. Baouche brought his trademark earnestness to the political cycles that began in 2016. As he followed his own political arch, his

views crystallized around a particular political podcast[1] delivered by a young man approximately Jeremy's age. This podcast offered engagement with an online community and the potential for real world political experience: Jeremy applied for an internship and sought to become a part of this community. While he was not selected, he still found meaning and community in the work. He continued to engage online and began to attend events associated with the 2020 presidential election in December of that year—the first one being in Harrisburg, PA.

One observation that counsel can offer is that Mr. Baouche received more than intellectual stimulation from these events. Mr. Baouche was 23 at the time these events were taking place. While it does not appear that he developed what we might consider close friends at the events, it does appear that he began to encounter a group of young men[2] approximately his own age and station in life that shared his way of thinking and life experiences. He reports getting lunch with them at these events and enjoying their company. Contrast this with the description contained in ¶ 35, lines 11-14, of the *PSR*. In the months leading up to January 6, 2021, Jeremy Baouche was a young man who was finding social outlets that matched his way of thinking and passions. His earnestness was valued and he was included in something in a way it does not appear he had been in the past.

Beyond this, the textbook sentencing arguments for Mr. Baouche are also true. He has been employed for most of his adult life. Even where he lost his job in conjunction with these events, he made steady efforts to regain employment and now has. He has never been in trouble with the law

---

[1] This podcast is known to the government and the defense has not hidden it from the government.
[2] These individuals are known to the government and, upon information and belief, also charged where appropriate.

before. Finally, he has had no issues during his pre-trial supervision. Additionally, counsel anticipates that Mr. Baouche will have paid the agreed upon restitution of $500 and assessment of $10 by the time of sentencing. Mr. Baouche states he is willing and able to pay and counsel aims to assist him with the paperwork on February 8 so that he may make the payment to the clerk's office.

## II.     OFFENSE CONDUCT.

This offense is about the toxic combination of a little knowledge being a dangerous thing and people concluding that their intensely held beliefs justify their actions. The defense does not dispute the seriousness of what occurred on January 6. Though Mr. Baouche was charged and convicted of a misdemeanor, he does not dispute that the number of misdemeanants who entered the Capitol contributed to the obstruction of Congress is a serious way. The defense does not intend to go on at length about the offense for it has been documented likely more than any other crime in our history: certainly the Court is familiar with what happened between the 900 people charged and the fact that most involved in litigating this case likely watched it unfold on television. There is no dispute about what happened nor its seriousness. Accordingly, the this section of the memorandum focuses on Mr. Baouche's contributions.

First, Mr. Baouche regrets his role in this offense and is remorseful for his conduct. Counsel anticipates he will address the Court to this effect during sentencing. While the *PSR*, ¶ 23, notes that Mr. Baouche did not make any statement accepting responsibility during the presentence interview, this is not because Mr. Baouche is without these feelings. Counsel's recollection is that Mr. Baouche was not asked about accepting responsibility during the *PSI*. In counsel's district, where he is an Assistant Federal Defender, there is no expectation that defendant's make unsolicited statements about the offense during the presentence interview. Counsel's practice, to the extent his clients are willing, is to have his clients address the court directly at sentencing. In any event, Mr.

4

Baouche's silence on this issue is not the absence of regret but waiting for the appropriate time. As a general matter, Mr. Baouche made the decision to plead guilty very early and quickly and readily accepted the illegality of his conduct. To the extent that his plea was delayed, it was the consequence of conversations between his counsel and the government—for which the defense does not fault the government, not Mr. Baouche dragging his feet.

Second, Mr. Baouche has reflected on his role in these events. He fully admits his conduct was wrong. To the extent he attempts to explain what he was thinking at the time it was that the barricades had fallen and a crowd was pouring into the Capitol, he rationalized that this meant entering at this time was an act of political expression rather than a criminal act: as the defense said, a little knowledge can be a dangerous thing when paired with depth of belief. Mr. Baouche does not persist in this view and acknowledges it was, for lack of a better word, not correct and not reasonable. As noted, Mr. Baouche prides himself on his knowledge of the world. He is embarrassed that he was wrong about the law. Moreover, to the extent his 'interpretation' of the law was not only incorrect but discounted important material facts about law enforcement deterring entry into the building, he regrets that he let his passions override his usually staid approach for something that was not only immature but dangerous.

Third, Mr. Baouche was not in the Capitol for long—seemingly fewer than 20 minutes. While he was carrying a bull horn and engaged in chants in areas that, perhaps, do not hold up well in retrospect, he attributes that to the heat of the moment not preparation nor planning. Mr. Baouche's behavior on January 6, 2021 was a deviation from the otherwise earnest young man looking for a political identity among many other young people.

### III.     ARGUMENT

A sentence of probation, restitution, and an appropriate fine or community service is sufficient but not greater than necessary to accomplish the law's purposes. Probation accomplishes the purposes on general and specific deterrence. Most importantly in this case, it would permit the court to resentence Mr. Baouche should he again violate the law in the future and ensure the Court that his rehabilitation was complete. Additionally, Mr. Baouche is now gainfully employed: already having lost one job in conjunction with this offense, not incarcerating him would help ensure he did not lose two. To the extent the harm in this case is to the public, community service or a fine would help contribute the public good undermined in this case or to the coffers of the federal government that has had to, not only restore the Capitol but manage the considerable legal fallout from this event. Finally, other defendants have been sentenced to similar terms which would avoid sentencing disparities. *See e.g. United States v. Wilkerson*, 1:21-cr-302(CRC); *United States v. Sizer*, 1:21-cr-621(CRC). While the chants that Mr. Baouche led while in the building may provide an arguable distinction between this and other cases, the defense contends that—while Mr. Baouche apologizes for that conduct—it is not a factor sufficient to aggravate this offense into a custodial sentence. Accordingly, a sentence of probation with the proposed conditions is sufficient but not greater than necessary.

### IV.     CONCLUSION.

There is no doubt about the seriousness and consequence of the events that took place on January 6. For Mr. Baouche however, he was 23 at the time of this offense and did so with a group of acquaintances with whom he had found a connection he had not previously known. He has acknowledged, and will do so again, that his conduct was illegal and accepts that a sentence is

6

warranted. A sentence of probation with restitution and an appropriate fine, however, is necessary but not greater than sufficient to accomplish the law's purposes.

Respectfully Submitted,

/s/Daniel M. Erwin/s/
By Daniel M. Erwin (ct28947)
FEDERAL DEFENDER'S OFFICE
10 Columbus Boulevard, 6th Floor
Hartford, CT 06106
Tel: (860) 493-6260
Fax: (860) 493-6269
Email: Daniel_Erwin@fd.org

## CERTIFICATION OF SERVICE

This is to certify that on February 6, 2023, a copy of the forgoing was filed electronically via the Court's CM/ECF system, and by that system, counsel for the Government has been provided with a copy of the forgoing.

/s/Daniel M. Erwin/s/
Daniel M. Erwin
